Timothy J. Mulreany
(Md. Bar No. 8812160123, tmulreany@cftc.gov)
Danielle Karst
(D.C. Bar No. 481881, dkarst@cftc.gov)
**U.S. Commodity Futures Trading Commission**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
Telephone:  (202) 418-5306 (Mulreany);
(202) 418-6158 (Karst)

Attorneys for Plaintiff U.S. Commodity Futures Trading Commission

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| **U.S. Commodity Futures Trading Commission,** | ) ) ) |
| **Plaintiff,** | ) ) **Civil Action No.** ) |
| **v.** | ) **Complaint For Injunctive** ) **And Other Equitable Relief** ) **and for Civil Monetary** |
| **Cory Williams and Williams Advisory Group, LLC,** | ) **Penalties Under the** ) **Commodity Exchange Act** ) **and Commission Regulations** |
| **Defendants.** | ) ) ) |

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.   SUMMARY

1.      From at least April 2014 through December 2016 ("Relevant Period"), Cory Williams ("Williams"), individually and as agent and officer of Williams Advisory Group, LLC ("WAG") (collectively, the "Defendants"), fraudulently solicited and directly accepted at least $13 million from at least 40 individuals and/or entities ("pool participants" or "participants") to participate in a pooled investment vehicle for the

purported purpose of trading commodity futures contracts, in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and its implementing regulations ("Regulations"), 17 C.F.R. §§ 1-190.10 (2016).

2.     Williams traded significant volumes of E-Mini S&P 500 futures contracts in his personal trading accounts and lost more than $8.3 million of the $13 million of pool participants' funds originally taken in, while at the same time fraudulently telling participants he was trading on their behalf at a profit.  Williams used the remaining funds received from participants to pay approximately $1.3 million for his personal expenses and to return approximately $3.4 million to some participants.

3.     At no time did Williams operate the pool as a legal entity separate from that of the pool operator, nor did Williams ever open a pooled trading account for the benefit of participants.  Instead, Williams misappropriated pool participants' funds and diverted them for Defendants' own use by: transferring pool participants' funds to personal bank accounts held in the name of Williams and/or the names of Williams and his wife, Brittany Williams, and/or WAG; funding trading accounts held in the name of, and for the benefit of, Williams; and, paying for Williams' personal expenses.  Williams further misappropriated pool participants' funds by diverting a portion to other participants as withdrawals of principal or purported profits in the form of a "Ponzi" scheme.

4.     Williams, individually and as agent and officer of WAG, made misrepresentations of material facts to participants, including but not limited to, falsely claiming to have profitably traded on behalf of participants, when in fact Williams knew that he was consistently losing money trading participants' funds.  To conceal his fraud

from participants, Williams sent participants text messages containing fabricated weekly profits.

5.     Williams, individually and as agent and officer of WAG, also omitted material facts in his communications with participants, including but not limited to failing to disclose: Williams' misappropriation of participants' funds; Williams' failure to register as a commodity pool operator ("CPO") as required by the Act; Williams' failure to operate the pool as a separate legally cognizable entity in violation of the Regulations; Williams' commingling of funds in violation of the Regulations; and Williams' failure to accept funds in the name of the pool in violation of the Regulations.

6.     During the Relevant Period, Williams, without registering with the Commission as a CPO, solicited, accepted, and received funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

7.     By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C)(2012), and Williams has engaged, is engaging, or is about to engage in acts and practices in violation of Sections 4m(1), 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1), 6$o$(1)(A) and (B) (2012), and Regulations 4.20(a)(1), (b), and (c), 17 C.F.R. §§ 4.20(a)(1), (b), and (c) (2016).

3

8.     During the Relevant Period, Williams committed the acts and/or omissions alleged herein both in his individual capacity and also within the course and scope of his employment, agency, or office with Defendant WAG.  WAG is therefore liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016), for Williams' violations of the Act and/or Regulations.

9.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel compliance with the Act and Regulations.

10.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

11.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive and other relief against any person whenever it appears to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

13. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the Defendants transacted business in the District of Arizona, and acts and practices in violation of the Act and Regulations occurred, are occurring, or are about to occur within this District.

### III.   PARTIES

14. Plaintiff **United States Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.  The Commission maintains its principal office at 1155 21st Street N.W., Washington, D.C. 20581.

15. Defendant **Williams Advisory Group, LLC** is an Arizona limited liability company formed on September 27, 2010, with its principal place of business at 2484 E. Lodgepole Drive, Gilbert, Arizona 85298.  WAG has never been registered in any capacity with the Commission.

16. Defendant **Cory Williams** is an individual residing in Gilbert, Arizona. Williams is the founder, President and agent of WAG.  Williams has never been registered in any capacity with the Commission.

### IV.   FACTS

#### A.   The Fraudulent Scheme

17. During the Relevant Period, Williams, individually and as agent and principal of WAG, solicited and received at least $13 million from at least 40 pool participants.  Williams knowingly and falsely represented to actual and prospective participants that the funds were pooled and used to trade E-Mini S&P 500 futures

contracts on behalf of the pool; that Williams was an experienced and profitable trader; and that Williams' trading for the pool was consistently profitable. All of these representations were false.

18.    To execute the fraudulent scheme, Williams, individually and as agent and principal of WAG, solicited family members, friends, neighbors, members of his church and other Mormon churches in and around Phoenix, Arizona. Williams solicited pool participants in person and by word-of-mouth.

19.    At Williams' instruction, pool participants sent funds directly to personal bank accounts held in the name of Williams and/or the names of Williams and Brittany Williams at various banks, including but not limited to: Compass Bank, J.P. Morgan Chase and Wells Fargo (collectively, "Williams Personal Bank Accounts"). Of the at least $13 million solicited and accepted from pool participants, Williams misappropriated participants' funds by transferring more than $8.3 million in participants' funds from his personal bank accounts to eight of Williams' personal trading accounts at registered futures commission merchants ("FCMs") AMP Clearing, Dorman, Gain Capital, and MB Trading Futures ("Williams Personal Trading Accounts"). None of these accounts were held in the name of a commodity pool.

20.    During the Relevant Period, Williams misappropriated participants' funds, traded significant volumes of futures contracts in his personal accounts using participants' funds, and consistently suffered heavy losses. Williams' trading for his own benefit in his personal accounts resulted in losses of more than $8.3 million. Williams lost money every single month he traded from April 2014 through and including

December 2016, all the while falsely representing to participants that he was profitably trading on their behalf.  As of December 31, 2016, all of Williams' personal trading accounts had been closed.

21.     Williams returned approximately $3.4 million of the original $13 million in participant funds to certain participants as withdrawals of principal or as purported trading "profits" in furtherance of Defendants' fraudulent scheme.  However, the majority of participants were unable to obtain a return of their funds.

22.     Williams used the remaining $1.3 million of the at least $13 million originally received from participants to pay for his personal expenses throughout the Relevant Period on such items as jewelry, charitable donations in his name, and living expenses.

23.     At all relevant times, Williams and his wife, Brittany Williams, were the sole signatories on the Williams Personal Bank Accounts.  Williams was the sole person authorized to trade in the Williams Personal Trading Accounts.  Accordingly, at all relevant times Williams had personal knowledge of the amount of funds accepted from participants, the disposition of those funds, the number of trades effected on behalf of participants, as well as the losses in the Williams Personal Trading Accounts and the complete absence of any profitable trading.

**B.**     **Operation of the Pool and Commingling**

24.     During the Relevant Period, Williams acted as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of,

among other things, trading in commodity futures, without being registered with the Commission as a CPO.

25.     At no time did Williams create or operate the pool as an entity cognizable as a legal entity separate from the pool operator.  As a result, at no time were any funds from pool participants received in the pool's name because a separate pool was never created.

26.     During the Relevant Period, Williams failed to maintain pool funds separately from Williams' own funds.  Williams commingled pool participants' funds with personal funds of Williams and Brittany Williams.  As described above, pool participants deposited at least $13 million in the Williams Personal Bank Accounts, controlled by Williams.  Williams transferred over $8.3 million in participants' funds to the Williams Personal Trading Accounts.

**C.**     **Material Misrepresentations and Omissions of Material Facts**

27.     During the Relevant Period, Williams, individually and as agent and principal of WAG, made fraudulent misrepresentations in person, via telephone, and via text messages to attract and retain pool participants, including that:

   a.   Pool participant funds would be pooled to trade commodity futures and returns would be derived from the pool's trading profits;

   b.   Williams was a successful and profitable trader; and

   c.   Williams' trading was consistently profitable during the Relevant Period.

28.     During the Relevant Period, Williams, individually and as agent and principal of WAG, knowingly made numerous material omissions to attract and retain pool participants, including by failing to disclose that:

    a.  Williams never set up the pool as an entity cognizable as a legal entity separate from the pool operator;

    b.  No trading on behalf of the pool took place;

    c.  Williams misappropriated pool participants' funds for his own use;

    d.  Williams was not registered with the Commission as a CPO as required by the Act and was operating the pool without the required CPO registration;

    e.  Williams commingled participants' funds with his own funds and WAG's funds in violation of federal law; and

    f.  Purported "returns" or withdrawals of principal paid to some pool participants were in fact the principal deposits of other pool participants and were not generated by profitable futures trading.

29.     To perpetuate Defendants' fraudulent scheme and to solicit additional pool participants, Williams also sent text messages to participants containing fabricated weekly profits.  These text messages falsely represented that trading on behalf of participants had occurred, and that participants' investments had increased in value as a result of profitable futures trading by Williams.  For example, one participant received an August 1, 2016 text message from Williams reporting the following fabricated weekly returns for the pool in May, June, and July 2016:

[Week of] 5/20 20k
[Week of] 5/27 25k
[Week of] 6/3 25k
[Week of] 6/10 25k
[Week of] 7/22 30k
[Week of] 7/29 30k

Williams' text message falsely represented that the participant's investment had increased in value as a result of profitable futures trading by Williams.  In reality, pool participants accrued no profits and suffered total or near total losses of their deposits.

**D.    Misappropriation of Pool Participants' Funds**

30.     While Williams represented to pool participants that all pool funds would be used to trade commodity futures on behalf of pool participants, in reality none of the funds Defendants accepted from pool participants were traded on their behalf.

31.     During the Relevant Period, instead of pooling and trading pool participants' funds in commodity futures as promised, Williams misappropriated participants' funds for unauthorized purposes, including paying his own personal expenses, and for the benefit of Williams' own trading accounts.

32.     Williams used pool participants' funds to pay his own personal expenses including dining, jewelry, vacations, and charitable donations.  Williams did not disclose unauthorized uses of pool participants' funds to participants or prospective participants.

33.     Williams also misappropriated participant funds to pay purported "profits," or a return of principal, to some participants in order to create the illusion that the pool was trading, and trading profitably.  Williams did not disclose the nature of these payments to pool participants or prospective pool participants.

34.     Numerous pool participants made repeated demands on Williams for the return of their funds.  Williams falsely represented to certain participants that he could not return their funds because the trading firm where the account was located had frozen the account.  Williams failed to comply with participants' redemption demands, and the majority of participants were unable to obtain a return of their funds.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**FRAUD IN CONNECTION WITH COMMODITY FUTURES CONTRACTS**
**VIOLATIONS OF SECTIONS 4b(a)(1)(A)-(C) OF THE ACT**
**(Against all Defendants)**

35.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

36.     Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012), provide in relevant part, that it is unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

37.     As described herein, Defendants violated Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012), by cheating or defrauding, or attempting to

cheat or defraud other persons; issuing or causing to be issued false statements; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the commodity futures contracts alleged herein, by, among other things: (i) fraudulently soliciting pool participants by making material misrepresentations and omissions about Williams' trading abilities and profits, and Williams' use of deposited funds; (ii) misappropriating pool participants' funds to trade in Williams' Personal Trading Accounts, to pay redemptions or to pay for Williams' personal expenses; and (iii) providing text messages to participants with fabricated weekly profits, all in violation of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012).

38.     Williams engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth thereof.

39.     Throughout the Relevant Period, Williams controlled WAG, directly or indirectly, and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting WAG's violations alleged in this count.  Williams is therefore liable for WAG's violations of the Act and Regulations, as alleged in this count, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

40.     The foregoing acts of fraudulent solicitation, misappropriation, omission and false statements by Williams occurred within the scope of his employment, office or agency with WAG.  Therefore, WAG is liable for Williams' violations of the Act and Regulations, as alleged in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016).

41.     Each act of fraudulent solicitation, misappropriation and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012).

## COUNT TWO

### FRAUD BY A COMMODITY POOL OPERATOR
### VIOLATIONS OF SECTIONS 4$o$(1)(A) and (B) OF THE ACT
### (Against Cory Williams)

42.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

43.     Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$o$(1)(A) and (B) (2012), make it unlawful for a CPO to use the mails or any means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

44.     As alleged herein, during the Relevant Period, Williams acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate or similar form of enterprise, for the purpose of, among other things, trading in commodity futures.

45.     Williams violated Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$o$(1)(A) and (B) (2012), in that he employed or is employing a device, scheme, or artifice to defraud actual and prospective pool participants or engaged or is engaging in

transactions, practices, or a course of business which operated or operates as a fraud or deceit upon pool participants or prospective pool participants, including without limitation: misappropriation of participants' funds, sending text messages containing fabricated weekly profits, misrepresenting and/or omitting material facts in solicitations and communications with participants, and acting as a CPO without registering as such as required by the Act.

46.     Each act of fraudulent solicitation, misappropriation and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6*o*(1)(A) and (B) (2012).

## COUNT THREE

### PROHIBITED ACTIVITIES BY A COMMODITY POOL OPERATOR
### VIOLATION OF REGULATIONS 4.20(A)(1), (B), and (C)
### (Against Cory Williams)

47.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

48.     Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2016), provides, "Except as provided in paragraph (a)(2) of this section, a commodity pool operator must operate its pool as an entity cognizable as a legal entity separate from that of the pool operator."

49.     As set forth above, during the Relevant Period, Williams acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures.

50.     During the Relevant Period, Williams, in operating an investment trust, syndicate, or similar form of enterprise for the purpose of, among other things, trading in commodity futures, did not operate the pool as an entity cognizable as a legal entity separate from himself, the pool operator, in violation of Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2016).

51.     Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2016), provides: "All funds, securities or other property received by a commodity pool operator from an existing or prospective pool participant for the purchase of an interest or as an assessment (whether voluntary or involuntary) on an interest in a pool that it operates or that it intends to operate must be received in the pool's name."

52.     As set forth above, during the Relevant Period, Williams, by operating an investment trust, syndicate, or similar form of enterprise for the purpose of, among other things, trading in commodity futures, failed to operate the pool as an entity cognizable as a legal entity separate from the pool operator, and received funds, securities or other property from existing or prospective pool participants for the purchase of an interest in the pool without receiving same in the pool's name, in violation of Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2016).

53.     Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2016), provides, "No commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."

54.     As set forth above, during the Relevant Period, Williams commingled pool participants' funds by: failing to maintain pool funds separately from Williams' funds

and WAG's funds; commingling pool funds with the personal funds of Williams and Brittany Williams and the funds of WAG; and, placing pool funds into the personal bank and trading accounts of Williams, in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2016).

55.     Each act and/or omission of Williams, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulations 4.20(a)(1), (b) and (c), 17 C.F.R. §§ 4.20(a)(1), (b) and (c) (2016).

## COUNT FOUR

### FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR
### VIOLATION OF SECTION 4m(1) OF THE ACT
### (Against Cory Williams)

56.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

57.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

58.     During the Relevant Period, Williams engaged in the acts and practices described above using the mails or instrumentalities of interstate commerce, including but not limited to: telephone, electronic mail, and text messages, while failing to register with the Commission, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

59.     During the Relevant Period, Williams was not exempt from registering as a CPO.

16

60.     Each use of the mails or instrumentalities of interstate commerce, including but not limited to: telephone, electronic mail, and text messages by Williams, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

A.     An order finding that Defendants violated Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012), and Defendant Williams violated Sections 4m(1), 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1), 6$o$(1)(A) and (B) (2012), and Regulations 4.20(a)(1), (b), and (c), 17 C.F.R. §§ 4.20(a)(1), (b), and (c) (2016);

B.     An order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with Defendants, including any of their successors, from, directly or indirectly:

1.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012));

2.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy)

17

(2016)), for their own personal account or for any account in which they have a direct or indirect interest;

3.     Having any commodity interests traded on their behalf;

4.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016);

7.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016);

8.     Engaging in any business activities related to commodity interests;

C.     An order directing Defendants, as well as any of their successors thereof, holding companies and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices

which constitute violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

D.    An order directing Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds they received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E.    An order directing Defendants, as well as any successors thereof, to provide a full accounting of all pool participant funds they have received during the Relevant Period as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

F.    An order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered  into between them and any pool participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described herein;

G.    An order directing Defendants to pay a civil monetary penalty for each violation of the Act and the Regulations described herein, plus post-judgment interest, in the amount of the higher of: (1) $170,472 for each

violation of the Act and Regulations committed; or (2) triple the monetary

gain to Defendants for each violation of the Act and the Regulations, plus

post-judgment interest;

H.    An order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.    Such other and further relief as the Court deems proper.

Dated: May 3, 2017                    Respectfully submitted,

                                      U.S. COMMODITY FUTURES TRADING
                                      COMMISSION

                                      /s/ Danielle Karst
                                      TIMOTHY J. MULREANY
                                      DANIELLE KARST
                                      Attorneys for Plaintiff
                                      U.S. COMMODITY FUTURES TRADING
                                      COMMISSION
                                      1155 21st Street, N.W.
                                      Washington, D.C. 20581
                                      Telephone:  (202) 418-5000
                                      tmulreany@cftc.gov
                                      dkarst@cftc.gov